**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

NAMRTA SINGH,

Plaintiff,

v.

NORTHWOOD HOSPITALITY LLC,

Defendant.

---

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

---

Plaintiff Namrta Singh for her Complaint states:

**INTRODUCTION**

1. Namrta Singh is one of the unlucky few who suffered a dizzying amount of complicated, severe symptoms resulting from the coronavirus. From the time of her hire as the only female Accounting Manager at Defendant Northwood Hospitality LLC, Ms. Singh was more than capable of satisfactorily performing her job. But when Ms. Singh got the coronavirus, and needed time away from work to rest, recuperate, and receive treatment, Defendant terminated her employment shortly after she had taken FMLA leave and completed ADA accommodation paperwork and within weeks of her scheduled return to work date. In doing so, Defendant fired the only female Accounting Manager and the only person in her department who was not born in the United States of America and spoke with an accent; treating her differently than a white, male, American-born colleague who had needed, and been given, extended leave the prior year.

Defendant's actions give rise to claims for failure to accommodate under the ADA, discrimination under Title VII and Section 1981, and violations of FMLA.

## PARTIES

2. Plaintiff Namrta Singh was a resident of the State of Colorado during her employment with Defendant Northwood Hospitality LLC ("Northwood").

3. Defendant Northwood is a Colorado Limited Liability Company with its principal place of business at 1819 Wazee Street, Denver, CO 80202.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. § 1331, and specifically under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2617(a)(2) and 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful were committed in the District of Colorado.

6. At all relevant times, Defendant Northwood was covered by the definition of "employer" set forth in 29 U.S.C. § 2611(4) of the FMLA.

7. At all relevant times, Defendant Northwood was covered by the definition of "employer" set forth in 42 U.S.C. § 2000e(b) of Title VII.

8. At all relevant times, Plaintiff was an "employee" pursuant to 42 U.S.C. § 2000e(f).

9. At all relevant times, Defendant Northwood was covered by the definition of "employer" set forth in 42 U.S.C. § 12111(5) of the ADA.

## JURISDICTIONAL PREREQUISITES

10. The jurisdictional prerequisites for filing this suit have been met.

11. On December 16, 2021 Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") (Charge No. 541-2022-00928) alleging sex, national origin and disability discrimination.

12. The EEOC issued a Notice of Right to Sue letter to Plaintiff on March 13, 2023, within 90 days of this filing.

## SPECIFIC ALLEGATIONS

13. Ms. Singh was hired by Northwood in October 2018 as a Property Accountant.

14. Ms. Singh performed her job well and was promoted within a year to an Accounting Manager.

15. Ms. Singh received satisfactory performance reviews as an Accounting Manager.

16. Throughout her employment with Defendant, Ms. Singh was the only female in the position of Accounting Manager.

17. The two individuals that Ms. Singh reported to, the Vice President and Senior Vice President, were males.

18. Throughout her employment with Defendant, the majority of the individuals working in the accounting department were males.

19. Ms. Singh was born in India and speaks English with an Indian accent.

20. All of the other employees in the accounting department were born in the United States of America and do not have accents.

21. In February 2021, Ms. Singh developed symptoms connected to the coronavirus.

22. On February 20, 2021, Ms. Singh was diagnosed with the coronavirus.

23. On February 22, 2021, Ms. Singh went on leave due to her coronavirus diagnosis.

24. Ms. Singh's symptoms from the coronavirus were severe.

25. Ms. Singh developed coronavirus-related pneumonia and at times was unable to walk between rooms because of the severity of her symptoms.

26. On February 27, 2021, Ms. Singh had to go to the Emergency Room because her heart rate was rapidly dropping and she had difficulty breathing related to pneumonia.

27. On another occasion she had to go to the hospital because she suddenly could not feel her legs.

28. Ms. Singh's other symptoms included high blood pressure, painful headaches, nausea, heartburn, insomnia, difficulty breathing, reduced stamina, fatty liver, back pain, diarrhea, dehydration, cough, fatigue, paresthesia, and body aches.

29. Prior to contracting coronavirus, Ms. Singh was healthy.

30. Ms. Singh is a single mother and was anxious due to missing work and worrying about her ability to provide for her family.

31. Throughout Ms. Singh's leave she kept Northwood informed about her medical condition through communications with Human Resources representative Trica Price.

32. Ms. Price asked her to fill out forms and provide updates, which Ms. Singh did despite her severe illness.

33. On May 13, 2021, Ms. Price emailed Ms. Singh and informed her that her FMLA leave was running out on May 16, that she would be put on unpaid leave from May 17 through June 17, and that she had until June 17 to provide paperwork requesting accommodations under the ADA.

34. On May 15, 2021, Ms. Singh was put on unpaid leave.

35. On May 17, 2021, Ms. Singh's physician completed ADA paperwork stating Ms. Singh had various symptoms including "COVID-19 pneumonia, chronic fatigue, shortness [of] breath, neck pain" and giving her a return to work date of on or before July 31, 2021.

36. Ms. Singh submitted the completed ADA form on May 28, 2021.

37. Ms. Singh and Ms. Price communicated a few more times in May and June, with Ms. Price asking Ms. Singh to clarify her return to work date.

38. Ms. Singh confirmed her return to work date of on or before July 31, 2021 by phone to Ms. Price.

39. Ms. Singh also told Ms. Price that she was looking forward to returning to work.

40. At no time did Ms. Singh indicate to Ms. Price that she would not be returning to work on or before July 31, 2021.

41. Ms. Singh received a call from Ms. Price informing her that her employment was terminated.

42. In response, Ms. Singh offered to come back to work immediately on a part-time basis until she was able to return to work full time on or before July 31, 2021.

43. Ms. Price denied Ms. Singh's request.

44. On June 15, 2021, Ms. Singh received a termination letter which acknowledged that her "expected return to work date [was] July 31, 2021," but then claimed that Ms. Singh was fired because it "appear[ed] [she] ha[d] no anticipated or definite date upon which [they] could expect [her] return."

45. Ms. Singh's colleague, a white, American, male, who was also an Accounting Manager, had a medical issue the prior year and was out for four and a half months and was allowed to return without incident.

46. As a result of Defendant's actions, Ms. Singh has suffered damages.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Failure to Accommodate in Violation of the ADA)

47. The foregoing allegations are realleged and incorporated herein by reference.

48. At all relevant times, Plaintiff had a disability.

49. Plaintiff could perform the essential functions of her job with the accommodation of additional medical leave.

50. Additional medical leave was a reasonable accommodation.

51. Defendant failed to provide Plaintiff with medical leave and unreasonably failed to continue the interactive process or provide any other accommodation. Instead, Defendant terminated Plaintiff's employment.

52. As a proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer damages and loss including loss of pay, salary and benefits, loss of job, loss of career opportunities, loss of earnings potential, emotional distress, humiliation, inconvenience, mental anguish, and related injuries of a similar nature.

### SECOND CLAIM FOR RELIEF
(Interference with FMLA Rights in Violation of the FMLA)

53. Plaintiff was entitled to take FMLA leave from February 22, 2021 to May 17, 2021.

54. Upon Plaintiff's return from FMLA leave to full-time work, she was entitled to be reinstated to her former position or to an equivalent position with equivalent pay, benefits, terms, and conditions.

55. Defendant terminated Plaintiff after she exercised her right to take FMLA leave.

56. Defendant's conduct interfered with Plaintiff's rights under the FMLA, including the right to be reinstated to her former position or to an equivalent position.

57. Defendant's failure to return Plaintiff to her former position was related to Plaintiff's exercise or attempted exercise of her FMLA rights.

58. Defendant's interference with Plaintiff's rights under the FMLA is a violation of 29 U.S.C. § 2615(a)(1).

59. As a result of Defendant's violation of the FMLA, Plaintiff has suffered damages, including lost pay and future wages, employment benefits, and other compensation.

60. In addition to her actual damages, Plaintiff is entitled to recover liquidated damages in an amount equal to her actual damages, as well as reasonable attorney fees, reasonable expert witness fees, interest, and costs, pursuant to 29 U.S.C. § 2617(a)(1)(A) and § 2617(a)(3).

61. Plaintiff is also entitled to equitable relief as appropriate, including employment, reinstatement, and promotion, pursuant to 29 U.S.C. § 2617(a)(1)(B).

**THIRD CLAIM FOR RELIEF**
(Retaliation for Exercise of FMLA Rights in Violation of the FMLA)

62. The foregoing allegations are realleged and incorporated herein by reference.

63. Plaintiff availed herself of a right protected under the FMLA by requesting, obtaining, and taking authorized FMLA leave between February 22, 2021 and May 17, 2021.

64. As a result of Plaintiff exercising her rights under the FMLA, Defendant retaliated against Plaintiff as described in this Complaint, including, but not limited to terminating Plaintiff.

65. Defendant violated 29 U.S.C. § 2615(a)(2) when it terminated Plaintiff.

66. As a result of Defendant's violation of the FMLA, Plaintiff has suffered damages, including lost pay and future wages, employment benefits, and other compensation.

67. In addition to her actual damages, Plaintiff is entitled to recover liquidated damages in an amount equal to her actual damages, as well as reasonable attorney fees, reasonable expert witness fees, interest, and costs, pursuant to 29 U.S.C. § 2617(a)(1)(A) and § 2617(a)(3).

68. Plaintiff is also entitled to equitable relief as appropriate, including employment, reinstatement, and promotion, pursuant to 29 U.S.C. § 2617(a)(1)(B).

**FOURTH CLAIM FOR RELIEF**
(Sex Discrimination in Violation of Title VII)

69. The foregoing allegations are realleged and incorporated herein by reference.

70. Plaintiff belongs to a protected group under Title VII because she is female.

71. Defendant employed Plaintiff as an Account Manager.

72. Plaintiff was qualified to perform the role of Account Manager and had been performing the role satisfactorily.

73. Defendant treated Plaintiff differently than her white, male counterparts in the terms and conditions of her employment by refusing to extend her medical leave and terminating her employment.

74. As a proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer damages and loss including loss of pay, salary and benefits, loss of job, loss of career opportunities, loss of earnings potential, emotional distress, humiliation, inconvenience, mental anguish, and related injuries of a similar nature.

**FIFTH CLAIM FOR RELIEF**
(National Origin Discrimination in Violation of Title VII)

75. The foregoing allegations are realleged and incorporated herein by reference.

76. Plaintiff belongs to a protected group under Title VII because she is Indian.

77. Defendant employed Plaintiff as an Account Manager.

78. Plaintiff was qualified to perform the role of Account Manager and had been performing the role satisfactorily.

79. Defendant treated Plaintiff differently than her white, male counterparts in the terms and conditions of her employment by refusing to extend her medical leave and terminating her employment.

80. As a proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer damages and loss including loss of pay, salary and benefits, loss of job, loss of career opportunities, loss of earnings potential, emotional distress, humiliation, inconvenience, mental anguish, and related injuries of a similar nature.

**SIXTH CLAIM FOR RELIEF**
(National Origin Discrimination in Violation of §1981)

81. Plaintiff is subject to the protections of 42 U.S.C. § 1981 because she was born in India.

82. Plaintiff was qualified to perform her Accounting Manager role and performed that role satisfactorily.

83. Despite her performance, Plaintiff was terminated.

84. Defendant treated Plaintiff differently than white, non-Indian, American born employees in its application of leave policies.

85. Plaintiff's National Origin and accent was a factor in her termination.

86. As a result of Defendant's actions, Plaintiff has suffered and continues to suffer loss of pay, salary and benefits, loss of job, loss of career opportunities, loss of earnings potential, emotional distress, embarrassment, humiliation, and impairment of the quality of life.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Namrta Singh respectfully requests that this Court enter judgment in her favor and against Defendant and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

B. Back pay and benefits;

C. Reinstatement or front pay and benefits;

D. Injunctive and/or declaratory relief;

E. Liquidated damages;

F. Punitive damages as allowed;

G. Attorney fees and costs of the action, including expert witness fees, as appropriate;

H. Pre-judgment and post-judgment interest at the highest lawful rate; and

I. Such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted October 10, 2023.

By: LOWREY PARADY LEBSACK, LLC

*s/Mary Jo Lowrey*
1490 N. Lafayette Street, Suite 304
Denver, CO 80218
Telephone: (303) 593-2595
Fax: (303) 502-9119
Email: maryjo@lowrey-parady.com

ATTORNEY FOR PLAINTIFF

Plaintiff's Address:

6554 S. Franklin St.
Centennial CO 80121